**Edward COOGAN and Margaret Coogan, Plaintiffs-Appellants,**

v.

**CITY OF WIXOM, Bruce Kirby and Philip Leonard, Defendants-Appellees.**

No. 86–1012.

United States Court of Appeals, Sixth Circuit.

Argued March 12, 1987.

Decided June 1, 1987.

Stephen N. Leuchtman, Sommers, Schwartz, Silver & Schwartz, Southfield, Mich., Patrick Burkett (argued), for plaintiffs-appellants.

Stuart A. Ulanoff, Ulanoff, Ross & Wesley, P.C., Southfield, Mich., Janice G. Hildenbrand (argued), for defendants-appellees.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

LIVELY, Chief Judge.

The plaintiffs sought damages for the alleged violation of their constitutional "right to use and enjoy property and to conduct a lawful business." (Plaintiffs' brief at 16). In addition to this federal claim, the plaintiffs sought to recover on two state causes of action, relying on diversity of citizenship. Following a nine-day jury trial the district court directed a verdict for the defendants, and the plaintiffs have appealed.

## I.

Edward Coogan will be referred to as "plaintiff," since his wife Margaret made no separate claim for relief. Plaintiff had a number of problems with the City of Wixom, a suburb of Detroit with a population of approximately 7500. Plaintiff developed real estate through a corporation known as Kelly Homes, Inc. Sometime prior to 1980 he sought to move a "modular building" to a location within Wixom as an office for Kelly Homes. The city building officer issued a stop work order, which delayed the installation of the building. Plaintiff alleged that there was no legal basis for the order. In May 1980 plaintiff purchased an undeveloped portion of a residential subdivision that had been platted many years earlier. The city refused to issue a building permit because plaintiff would not agree to sewer hook-up for lots within 200 feet of the existing sewer system, as required by a city ordinance. When plaintiff began constructing a road within the subdivision without a permit the city issued a stop work order. This dispute continued throughout 1980.

Two fires occurred at the office of Kelly Homes on November 7 and 8, 1980. The first fire was caused by an electrical malfunction, and caused damages of approximately $2,000. The second fire resulted in a total loss. Defendant Bruce Kirby, a Wixom police officer with some training in arson investigation, was on duty the morning of November 8. When dispatched to the fire scene Kirby was advised that a gas can had been found on the premises. Kirby secured the premises and called Ser-

geant Michael Malloy of the Michigan State Police Arson Strike Force. With plaintiff's permission Kirby and Malloy entered the building and conducted an investigation. Two points of origin were located along with irregular burn patterns consistent with the use of flammable liquids. The investigators photographed the interior and took carpet samples where a "sniffer" indicated the presence of such liquids.

Sergeant Malloy directed Kirby in the follow-up investigation which produced evidence that the building had been listed for sale, that taxes on the building were delinquent and that plaintiff had greatly increased the fire insurance coverage on the building immediately before the fire in response to a suggestion sent by the insurer many months previously. Kirby conducted 42 interviews in the course of his investigation, six of which were taped. Before questioning plaintiff, two individuals who conducted a business in part of the burned building, and a man who had threatened to "get even" with plaintiff, Kirby advised them of their "Miranda rights."

Following prescribed procedures, Kirby took the entire investigative file to the county prosecutor's office. When these materials were supplemented with statements of the plaintiff under oath given to an attorney for the insurer, the county prosecutor authorized the issuance of a warrant for burning insured property. This authorization was taken to a local district judge who issued the warrant. Plaintiff was arrested and a preliminary examination was conducted before a different state district judge. Plaintiff was represented by counsel at this hearing. His attorney cross-examined all but one of the 15 witnesses produced by the prosecutor. The district judge found probable cause to believe that a felony had been committed and that Coogan had committed it; he bound plaintiff over for trial in the state circuit court.

In circuit court plaintiff's attorney made a motion to quash the charge. As this attorney testified at the trial in federal district court, the purpose of the motion to quash was to have the circuit court judge reexamine the issue of probable cause. After a hearing on the motion the circuit court judge found no basis to overturn the decision of the district court judge, and the prosecution continued. In July 1982 the prosecution was dismissed by the circuit court for failure to meet speedy trial requirements.

## II.

Plaintiff's claims under state law sought damages for malicious prosecution and for intentional infliction of emotional distress.

### A.

■ The elements of malicious prosecution are clearly defined under Michigan law. In order to recover a plaintiff must show: "(1) a criminal prosecution instituted against plaintiff by defendant, terminating in plaintiff's favor, (2) absence of probable cause for the criminal proceeding, and (3) malice or a primary purpose in bringing the action other than bringing the offender to justice." *Rivers v. Ex-Cell-O Corp.,* 100 Mich.App. 824, 832, 300 N.W.2d 420 (1980) (citations omitted). In granting the directed verdict the district court held, as a matter of law that plaintiff had failed to show an absence of probable cause. Plaintiff argues that this was error, contending that the question whether the defendants had probable cause to institute the criminal prosecution was for the jury. The plaintiff relies on the decision of Michigan Court of Appeals in *Koski v. Vohs,* 137 Mich.App. 491, 358 N.W.2d 620 (1984). However, this decision was reversed by the Supreme Court of Michigan, which wrote:

When the material facts are undisputed and in the opinion of the court constitute probable cause, he should direct a verdict in favor of the defendant.

*Koski v. Vohs,* 426 Mich. 424, 430, 395 N.W.2d 226 (1986), *quoting Clanan v. Nushzno,* 261 Mich. 423, 427, 246 N.W. 168 (1933).

The district court found that the material facts were undisputed. Kirby had obtained expert assistance, had conducted a thorough investigation and had presented his entire file to the county prosecutor who

authorized the warrant. All plaintiff had been able to show in nine days of trial was that there were other possible leads that Kirby might have followed in his investigation. He did not demonstrate that Kirby knew of any exculpatory information that he withheld from the county prosecutor, or produce any other evidence that Kirby acted in bad faith. In addition, there was absolutely no evidence connecting defendant Leonard, the Wixom Chief of Police, with the decision to seek a warrant. On this basis the district court directed a verdict in favor of both individual defendants and the City of Wixom.

A decision on probable cause is a determination that "involves only the conduct of a reasonable man under the circumstances." *Koski*, 426 Mich. at 432, 395 N.W.2d 226, quoting Prosser & Keeton, *Torts*, (5th ed.), § 119, p. 882. The fact that Kirby may have been mistaken in concluding that plaintiff caused his building to burn is immaterial, since "probable cause is a matter of the appearances presented to the defendant." *Koski*, 426 Mich. at 434, 395 N.W.2d 226. Where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, "the failure to make a further investigation does not negate probable cause." *Id.* at 436, 395 N.W.2d 226 (footnote omitted).

Plaintiff has failed to identify any fact *known to Kirby* at the time he obtained the warrant that negated the existence of probable cause. Kirby was in possession of a number of facts which would indicate to a reasonable person that the crime of arson had been committed and that plaintiff was the person responsible. The fact that plaintiff might have a defense to the charge that was unknown to Kirby or that he might ultimately win acquittal at a trial did not create an issue of material fact. The standard of proof of guilt beyond a reasonable doubt has no relevance to the issue of probable cause to institute a prosecution.

The district court properly directed a verdict on the state claim of malicious prosecution.

**B.**

This court thoroughly analyzed the Michigan cause of action for intentional infliction of emotional distress in *Ross v. Burns*, 612 F.2d 271 (6th Cir.1980). We wrote:

Although the Michigan Supreme Court has yet to rule on a case of this nature, the Michigan Court of Appeals has recognized the tort of intentional infliction of emotional distress as a viable cause of action. *Frishett v. State Farm Mutual Insurance Co.*, 3 Mich.App. 688, 143 N.W.2d 612 (1966), *lv. den.*, 379 Mich. 733 (1966). The Michigan Court explicitly adopted the definition in Restatement (Second) of Torts § 46 (1948), which reads in applicable part: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, ..." *Warren v. June's Mobile Home Village and Sales, Inc.*, 66 Mich.App. 386, 239 N.W.2d 380, 382 (1976).

The Restatement definition implies four distinct elements of proof necessary to sustain a claim. A complainant must produce evidence of "extreme and outrageous" conduct, of the actor's injurious intent or reckless disregard for the consequences of his acts, of causation, and of the actual experience of severe distress before his case will be submitted to a jury. Expounding the meaning of "extreme and outrageous" conduct, the Restatement Commentary emphasizes the high threshold standard of proof required on this element of the tort. The actor's motivation, however deplorable, is a separate question which must not be allowed to infect the objective assessment of his conduct.

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a

174

degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

Restatement (Second) of Torts § 46, comment d at 73 (1948).

*Id.* at 273.

■ The Michigan Supreme Court has never directly recognized the existence of such a cause of action, see *Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 597, 374 N.W.2d 905 (1985), but has noted that the Michigan Court of Appeals has recognized it along with courts in other jurisdictions. Assuming that the Michigan high court would recognize the cause of action if the question were squarely presented, we agree with the district court that the evidence produced by plaintiff did not establish the elements of the tort, as formulated in any jurisdiction. The efforts of city building officers and other officials to require plaintiff to obtain permits before constructing roads and residences in the development area and doing the construction work necessary to place a modular building in the city may have been misguided and somewhat heavy handed, but they did not remotely approach "extreme and outrageous conduct." The same is true of the requirement that plaintiff vacate rented premises for which no certificate of occupancy had been obtained. There was a plausible reason, in law, for each requirement imposed by the city, and each dispute was resolved when the parties had an opportunity to examine and discuss their disagreements.

Viewing the evidence upon which this claim relies in the light most favorable to plaintiff, reasonable minds can only conclude that he failed to establish a case of intentional infliction of emotional distress.

**III.**

The claim under 42 U.S.C. § 1983 is such a melange—or more properly, a hodgepodge—that it is difficult to know how to treat it. As Chief Judge Campbell wrote in *Chiplin Enterprises v. City of Lebanon*, 712 F.2d 1524, 1526 (1st Cir.1983), plaintiff "aims in the general direction of the federal Constitution with buckshot." It appears that plaintiff claims that his arrest and prosecution deprived him of liberty interests guaranteed by the Fourth Amendment and that "harassment" by city employees deprived him of property interests without due process of law and the equal protection of the laws in violation of the Fourteenth Amendment.

**A.**

At trial plaintiff dismissed a claim in the complaint that his arrest violated the Constitution. He was arrested pursuant to a warrant, and had no legal basis for such a claim. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

■ An action for damages under § 1983 based on a claim of malicious prosecution is properly dismissed when the plaintiff fails to show that all the elements of the charge under state law are present. *Singleton v. City of New York*, 632 F.2d 185, 193–95 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). We have already determined that plaintiff failed to establish the absence of probable cause under Michigan law. Moreover, as the Supreme Court stated in *Baker v. McCollan*, "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." 443 U.S. at 145. The alleged injury caused by the city's prosecution of plaintiff did not result from a violation of the Constitution or laws of the United States. Even if plaintiff had been able to establish all the elements for a claim of malicious prosecution, his proper avenue of relief was the

state tort action only, not a claim under § 1983. *Cook v. Houston Post,* 616 F.2d 791, 794 (5th Cir.1980). Only when "the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension" does § 1983 provide a remedy for a claim of malicious prosecution. *Dunn v. State of Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). "This [claim under § 1983] involves yet another effort to make a federal question out of litigation where exclusive jurisdiction is in the State courts." *Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 676 (6th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977).

■ There is an additional reason for holding that plaintiff had no cause of action under § 1983 for malicious prosecution. Plaintiff contested the issue of probable cause at his preliminary hearing. Since an accused has the right to call witnesses and cross-examine witnesses produced by the State, a preliminary hearing is an adversary proceeding under Michigan law. *People v. Johnson,* 8 Mich.App. 462, 466, 154 N.W.2d 671 (1967). In this case plaintiff also contested the finding of probable cause in state circuit court after the examining judge bound him over. Under these circumstances we believe he is collaterally estopped from raising the issue of probable cause in his § 1983 claim for malicious prosecution. Where a party has had a "full and fair opportunity" to litigate an issue in earlier state proceedings, he is precluded from relitigating the same issue in a later federal case. *Allen v. McCurry,* 449 U.S. 90, 94–96, 103–04, 101 S.Ct. 411, 414–15, 419, 66 L.Ed.2d 308 (1980). The Seventh Circuit recently applied collateral estoppel in a § 1983 action based on an alleged false arrest, *Guenther v. Holmgreen,* 738 F.2d 879 (7th Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985), and its reasoning applies to this case where malicious prosecution is the basis of a § 1983 action.

We do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action. Some preliminary hearings are little more than formalities. Also, even when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding. However, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.

**B.**

■ The district court was correct in directing a verdict on the due process and equal protection claims raised by plaintiff in the § 1983 count of his complaint. Plaintiff did not sue the two city building officers who allegedly harassed him and deprived him of the right to use and enjoy his property and to conduct a lawful business. Instead, he sought to hold the City of Wixom liable for their actions. In overruling *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as it held municipalities were not "persons" under § 1983, the Supreme Court did not open the door to suits against cities and other political subdivisions for every misdeed of their employees. In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court carefully set forth the limits to such actions:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037.

Plaintiff failed to show that any city official or employee who allegedly infringed his constitutional rights had authority to make policy. The Supreme Court has de-

fined the authority that must be possessed by a decisionmaker to render a municipality liable for acts taken pursuant to that official's decisions:

> Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. See *e.g., Oklahoma City v. Tuttle,* 471 U.S. [808], at ——, 105 S.Ct., [2427] at ——. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986) (footnotes omitted). (plurality op.)

Likewise, plaintiff failed to demonstrate that the city council of Wixom, which undoubtedly did have policymaking authority, either declared a policy of causing city employees to take actions that deprived plaintiff of constitutional rights, or acquiesced in persistent practices establishing a custom of such deprivation. We adopt the Fifth Circuit's statement of the burden to be discharged by a plaintiff when suing a municipality under § 1983:

> If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy.

*Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Plaintiff's pleadings and proof did not approach this standard.

The claims plaintiff asserted under § 1983 related to matters of local concern with no federal constitutional overtones. He merely attempted to dress a mundane dispute over building permits and real es-

tate development in the mantle of a controversy of constitutional proportions. If these disputes were serious enough to require judicial intervention, plaintiff's remedy must be found in state law.

## IV.

 Federal Rule of Appellate Procedure 30(b) requires appellant to consult with appellee about the contents of the joint appendix on appeal to this court. Appellants' attorney clearly failed to do this and this failure resulted in added costs to the appellees. Accordingly, appellees' motion for costs is granted.

The judgment of the district court is affirmed. The defendants will recover costs on appeal.