THE STATE, EX REL. CELEBREZZE, ATTORNEY GENERAL, APPELLANT, *v.*
HUGHES ET AL.; KLEIN, APPELLEE.

[Cite as State, ex rel. Celebrezze, *v.* Hughes (1991), 58 Ohio St. 3d 273.]

(No. 89-2219—Submitted December 18, 1990—Decided April 10, 1991.)

statements and evidence obtained from the appellee pursuant to a grant of "use" immunity in the context of a federal criminal prosecution were properly utilized by the Ohio Attorney General in a penalty assessment under R.C. 1345.07(D) and 4549.48(B). For the following reasons, we hold that such admissions were properly utilized, and reverse the judgment of the court of appeals in this regard.

The Fifth Amendment to the United States Constitution protects an individual against penalties imposed as part of a criminal punishment. As the Supreme Court noted in *Hale* v. *Henkel* (1906), 201 U.S. 43, 67: "The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself — in other words, to give testimony which may possibly expose him to a *criminal* charge." (Emphasis added.)

The privilege does not extend to penalties of a noncriminal nature. *United States* v. *Apfelbaum* (1980), 445 U.S. 115, 124-125. Fear of public disgrace or personal danger of civil liability is not an adequate constitutional or legal ground to successfully invoke the privilege and protection of immunity. Therefore, only criminal liability need be immunized. *Ullmann* v. *United States* (1956), 350 U.S. 422; *Piemonte* v. *United States* (1961), 367 U.S. 556.

Accordingly, to successfully invoke the privilege and protection of his federal "use" immunity in this case, appellee must demonstrate that R.C. 1345.07(D)[1] and 4549.48(B)[2] authorize criminal rather than civil penalties.

*Lee I. Fisher,* attorney general, *Dianne Goss Paynter, Ted Barrows* and *Mary Patrick Latham,* for appellant.

HOLMES, J. The single issue presented in this appeal is whether

---

[1] R.C. 1345.07(D) provides:

"In addition to the other remedies provided in this section, if the violation is an act or practice that was declared to be unfair, deceptive, or unconscionable by a rule adopted pursuant to division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based occurred or an act or practice that was determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the court's determination was made available for public inspection

In *United States* v. *Ward* (1980), 448 U.S. 242, the United States Supreme Court examined whether a proceeding for the assessment of a civil penalty under the Federal Water Pollution Control Act was criminal within the ambit of the Fifth Amendment's guarantee against compulsory self-incrimination. The court in *Ward* articulated a two-level test for determining whether a penalty is civil or criminal, noting that the issue is one of statutory construction:

"First, we have set out to determine whether * * * [the legislature], in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another. * * * Second, where * * * [the legislature] has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. * * *" (Citations omitted.) *Id.* at 248-249.

In making the inquiry required by the second prong of *Ward*, " 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.' " *Id.* at 249 (quoting *Flemming* v. *Nestor* [1960], 363 U.S. 603, 617). The court also noted, at 249, that the seven considerations listed in *Kennedy* v. *Mendoza-Martinez* (1963), 372 U.S. 144, 168-169, while neither exhaustive nor dispositive, could be instructive in determining a statute's effect and purpose.[3]

In analyzing the statutory provisions in this case, we observe that Ohio's Consumer Sales Practices Act is a remedial law designed to provide various *civil remedies* to aggrieved consumers and must be liberally construed pursuant to R.C. 1.11. *Einhorn* v. *Ford Motor Co.* (1990), 48 Ohio St. 3d 27, 548 N.E. 2d 933; *Celebrezze* v. *Hughes* (1985), 18 Ohio St. 3d 71, 18 OBR 102, 479 N.E. 2d 886. The General Assembly has codified these civil remedies at R.C. 1345.07(D). Pur-

---

pursuant to division (A)(3) of section 1345.05 of the Revised Code, the attorney general may request and the court may impose a civil penalty of not more than twenty-five thousand dollars against the supplier. The civil penalties shall be paid as provided in division (G) of this section."

[2] R.C. 4549.48(B) provides:

"In addition to the remedies otherwise provided by this section, the attorney general may request and the court shall impose a civil penalty of not less than one thousand nor more than two thousand dollars for each violation. A violation of any provision of sections 4549.41 to 4549.46 of the Revised Code shall, for purposes of this section, constitute a separate violation with respect to each motor vehicle or unlawful device involved, except that the maximum civil penalty shall not exceed one hundred thousand dollars for any related series of violations by a person. Civil penalties ordered pursuant to this division shall be

paid as follows: one-fourth of the amount to the treasurer of the county in which the action is brought; three-fourths to the consumer protection enforcement fund created by section 1345.51 of the Revised Code."

[3] The standards set forth in *Mendoza-Martinez* are:

"[W]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * *." (Footnotes omitted.) *Mendoza-Martinez*, 372 U.S. at 168-169.

suant to this section, "* * * the attorney general may request and the court may impose a *civil penalty* of not more than twenty-five thousand dollars against the supplier. The *civil penalties* shall be paid as provided in division (G) of this section." (Emphasis added.)

Furthermore, civil penalties are also expressly provided for by the Odometer Rollback and Disclosure Act. R.C. 4549.41 *et seq.* Pursuant to R.C. 4549.48(B):

"In addition to the remedies otherwise provided by this section, the attorney general may request and the court shall impose a *civil penalty* of not less than one thousand nor more than two thousand dollars for each violation. * * * [T]he maximum *civil penalty* shall not exceed one hundred thousand dollars for any related series of violations by a person. *Civil penalties* ordered pursuant to this division shall be paid as follows: one-fourth of the amount to the treasurer of the county in which the action is brought; three-fourths to the consumer protection enforcement fund created by section 1345.51 of the Revised Code." (Emphasis added.)

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E. 2d 413, paragraph five of the syllabus, quoted with approval in *State* v. *American Dynamic Agency* (1982), 70 Ohio St. 2d 41, 45, 24 O.O. 3d 90, 92, 434 N.E. 2d 735, 737; *State, ex rel. Brown,* v. *Dayton Malleable* (1982), 1 Ohio St. 3d 151, 155, 1 OBR 185, 188, 438 N.E. 2d 120, 123.

The statutory language in this case is clear and unambiguous. The General Assembly intended in R.C. 1345.07(D) and 4549.48(B) to impose civil penalties and to allow the penalties to be imposed without regard to the procedural protections and restrictions available in criminal prosecutions. This intent is evidenced by the fact that the authorized sanction is labeled a "civil penalty" and is remedial in purpose and effect.

However, even where the legislature has clearly expressed an intention to establish a civil penalty, a challenger may show that the purpose and effect of the statute are punitive and negate the legislature's classification. *United States* v. *One Assortment of 89 Firearms* (1984), 465 U.S. 354, 365, citing *United States* v. *Ward* (1980), 448 U.S. 242, 248-249.

Recently in *United States* v. *Halper* (1989), 490 U.S. 435, the United States Supreme Court considered when a civil penalty might be deemed "punishment" for double jeopardy purposes. The specific question addressed by the *Halper* court was "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *Id.* at 443. The *Halper* court postulated that "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447, fn. 7. The *Halper* court held that double jeopardy would be implicated by an additional civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as a *deterrent* or *retribution.*" (Emphasis added.) *Id.* at 449. Although an authorized civil penalty may be so extreme and divorced from the govern-

ment's damages and expenses as to constitute punishment, that case is limited to the situation where a civil penalty is "overwhelmingly disproportionate" to the damages caused by the offender. *Id.*

In this case, the trial court held appellee and three other defendants jointly and severally liable for a total penalty of ninety-two thousand dollars. This ninety-two thousand dollars was to be distributed pursuant to R.C. 1345.51 in the following manner: one-fourth of the amount to the treasurer of the county in which the action was brought, and three-fourths to the consumer protection enforcement fund created by R.C. 1345.51. R.C. 1345.51 provides that "[t]he money in the consumer protection enforcement fund shall be used for the *sole purpose of paying expenses incurred* by the consumer frauds and crimes section of the office of the attorney general." (Emphasis added.)

Furthermore, R.C. 1345.05 and Ohio Adm. Code 109:4-1-01 *et seq.* codify the duties and responsibilities of the Consumer Frauds and Crimes Section of the Attorney General's office. Pursuant to these provisions, the section is empowered to engage in substantive rulemaking by R.C. 1345.05(B)(2), Ohio Adm. Code 109:4-1-05(G) and 109:4-1-05(H)(1)(c), and procedural rulemaking by R.C. 1345.05(A)(1), Ohio Adm. Code 109:4-1-05(A) and 109:4-1-04(H)(1)(b). The section is also required to receive and process consumer complaints by Ohio Adm. Code 109:4-1-05(H)(2)(a), and the processing of consumer complaints includes a mediation service for consumers and suppliers. The section is also charged by R.C. 1345.05(A)(3), Ohio Adm. Code 109:4-1-05(B) and 109:4-1-05(H)(4) with establishing and maintaining a public inspection file, so that consumers and suppliers may

know, on a continuing basis, both the rules and policy interpretations adopted by the Attorney General and the judgments and opinions of courts of this state which determine the acts and practices that violate the Consumer Sales Practices Act. Thus, the proceeds of the civil penalties in the R.C. 1345.51 fund support a host of worthwhile remedial activities which the legislature has authorized.

As for the one-fourth of the total penalty which goes to the treasurer of the county in which the action was brought, appellant argues, and we agree, that such funds are utilized to subsidize the costs incurred by the county court that hears the action.

As such, we cannot say that the ninety-two-thousand-dollar penalty assessed against four defendants in this case rises to the level of punishment as contemplated by the court in *Halper*. This is not the case where the penalties are overwhelmingly disproportionate and wholly divorced from the expenses incurred by the state through investigation, prosecution and enforcement. Rather, this case presents the situation where the statutory penalties do no more than make the government whole. Furthermore, we must note that the penalties imposed represent only a portion of an otherwise remedial resolution, which included injunctive relief and other proscriptions on the defendants' future behavior. For these reasons, we conclude that the penalties authorized by R.C. 1345.07(D) and 4549.48(B) by their labeling and by serving remedial purposes are civil in nature.

Accordingly, the judgment of the court of appeals is reversed on the single issue presented, and we remand the cause to the court of common pleas for further proceedings consistent with this opinion.

*Judgment accordingly.*

MOYER, C.J., SWEENEY and RESNICK, JJ., concur.

DOUGLAS, WRIGHT and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. Appellee was granted use immunity. The purpose of use immunity (or derivative use immunity) is to leave the person granted the immunity in substantially the same position as though the person had exercised his or her rights under the Fifth Amendment. In the case at bar, appellee was not so treated. Since he was not so treated, the judgment of the court of appeals should be affirmed.

WRIGHT, J., dissenting. Appellee, granted use immunity that Ohio courts are bound to respect,[4] finds himself and others faced with $92,000 in "civil" fines above and beyond compensation paid to reimburse the people they defrauded. The majority reaches the conclusion the fines are civil by finding that they are remedial. However, they are far from remedial within the meaning set forth in *United*

States v. *Halper* (1989), 490 U.S. 435. Consequently, I must respectfully dissent from the judgment and opinion of the majority.

For a fine to be civil, at least for double jeopardy purposes,[5] *Halper* requires that the fine remedy the wrong for which it was imposed, not wrongs that may occur in the future. *Halper, supra,* at 448-449. The fines that the majority upholds today support other consumer protection efforts and are disproportionate to the damage caused by the wrongs for which they are imposed. Three quarters of the revenue from today's fines goes to the consumer protection enforcement fund for use in *future* enforcement actions. R.C. 1345.51.

Additionally, the amount of the fines neither bears a relationship to the damages caused by the wrongful acts nor does it approximate the state's expenses in bringing the enforcement action. Since the victims have already been made whole by fines not challenged here, the fines currently at issue may go only to compensate the state for its expenses in bringing the action. There can be no doubt that the $92,000 in fines beyond the amounts paid in victim restitution is "over-

---

[4] At the end of the last century, the United States Supreme Court held that immunity grants must be at the least co-extensive with the right against self-incrimination provided by the Fifth Amendment. *Counselman* v. *Hitchcock* (1892), 142 U.S. 547. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." More recently, the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination, incorporated through the Fourteenth Amendment, applies to the states. *Malloy* v. *Hogan* (1964), 378 U.S. 1. Also in 1964, the United States Supreme Court held that

a grant of immunity in either a state or federal forum was binding in both forums to the extent necessary to protect Fifth Amendment rights. *Murphy* v. *Waterfront Comm. of New York* (1964), 378 U.S. 52.

[5] The court of appeals correctly analogized the present facts to those in *Halper, supra. Halper* involved a double jeopardy challenge to the imposition of a "civil" fine after the imposition of a criminal penalty. Just as the Double Jeopardy Clause barred imposition of a criminal penalty in *Halper,* the right against self-incrimination bars imposition of a criminal penalty in this case.

whelmingly disproportionate" to the uncompensated damages caused by the offender and, as such, is a criminal penalty. *Halper, supra,* at 449.

As the appellate court appropriately held, *Halper* demands that we vacate the additional $92,000 in fines and remand this case to the trial court for determination of a fine that compensates the state only for its expenses. Accordingly, I would affirm the decision of the appellate court. For these reasons, I respectfully dissent from the result reached by the majority.

H. BROWN, J., concurs in the foregoing dissenting opinion.