BROADNAX, Appellant,

v.

GREENE CREDIT SERVICE et al., Appellees.

[Cite as *Broadnax v. Greene Credit Service* (1997), 118 Ohio App.3d 881.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 96–CA–113.

Decided April 4, 1997.

*Jason David Fregeau,* for appellant.

*Patrick J. Janis,* for appellee.

---

FAIN, Judge.

Plaintiff-appellant, Vaughn Broadnax, appeals from summary judgment rendered in favor of defendant-appellees, James Grout and Greene Credit Service. Broadnax contends that the trial court erred in finding that he failed to establish a genuine issue of fact regarding the elements necessary to maintain actions for malicious prosecution, abuse of process, and violation of the Ohio Consumer Sales Practices Act ("OCSPA"). He further contends that the trial court erred by dismissing his claim for civil rights violations. Finally, he claims that the trial court erred by ruling that his motion *in limine* to exclude certain character evidence was moot.

We conclude that the trial court correctly rendered judgment on Broadnax's claims for malicious prosecution, abuse of process, and violation of his civil rights. However, we find that the trial court erroneously granted judgment on Broadnax's claim alleging violations of the OCSPA. In light of our ruling remanding Broadnax's OCSPA claim, his motion *in limine* is no longer moot. However, we will not render an advisory opinion on the merits of the motion. Accordingly, the judgment of the trial court is reversed and this cause is remanded for a determination on the merits of Broadnax's OCSPA claim.

## I

This case finds it origin in the issuance of a check in the amount of $165, which was returned for insufficient funds, and the subsequent criminal prosecution of the maker. The relevant facts in this case are derived from the pleadings, depositions, and transcript of an arbitration hearing.

In 1993, Broadnax was managing thirteen rental properties, located in Xenia, Ohio, on behalf of the estate of his mother, who died in 1992. In May 1993, Broadnax entered into an agreement with Don Humphrey whereby Humphrey agreed to perform repair and maintenance work upon two of the rental properties managed by Broadnax in exchange for the sum of $165. In his deposition, Broadnax stated that because he had to leave town for business training prior to completion of the work, he post-dated a check to Humphrey for $165. He testified that the check was dated either the 17th or the 19th of May.

Broadnax testified that he learned from a tenant of one of the rental properties that Humphrey had not done the work agreed upon. Broadnax testified that he attempted to call Humphrey, and that he also left a note on Humphrey's door, but that he received no response. Broadnax testified that he then withdrew some money from his checking account, at an ATM in New Jersey, in order to prevent the check from clearing the bank. Broadnax's testimony taken during the arbitration of this matter, however, indicates that when he was confronted with his bank records, he admitted that he did not withdraw the money through an ATM. While the evidence clearly shows that he did not put a stop payment order on the check, Broadnax's testimony is unclear as to what actions he actually took to prevent the check from clearing.

Broadnax testified that he learned that the check did not clear when it was returned to him for insufficient funds. He testified that he noticed that the date on the check had been altered. He testified that, in late May or early June, he received a "couple of calls on [his] answering machine * * * from Don's Super Value about the check he had written to the store." He testified that he later had a discussion with a person named Don regarding the check. He learned that Humphrey had negotiated the check at Don's Super Valu, by endorsing it to the store. Broadnax testified that he informed Don that "the check was no good because [Humphrey] didn't do the work and [Broadnax] took the money out of [his] account so it wouldn't cover it." He further testified that he told the person that he would not satisfy the check.

Broadnax testified that he next received a letter from Grout, of Greene Credit, stating that he had written a bad check to Don's Super Valu, and requesting the amount of the check plus a fee. Broadnax testified that he did not contact Grout regarding the letter, despite receiving messages from Greene Credit on his

answering machine. Thereafter, Grout filed a complaint and affidavit with the Greene County Prosecutor alleging that Broadnax "with purpose to defraud issued a check in the amount of $165.00 (plus bad check fee of $20.00) to Don's Super Valu for payment of money being drawn upon Society National Bank knowing it would be dishonored." Broadnax next received a criminal summons. He testified that he did not contact Greene Credit even after the criminal complaint was filed because he "didn't feel [he] did anything to warrant the complaint."

Broadnax indicated that when he appeared in court for arraignment on the criminal charge he knew several people in the courtroom, including the acting judge. According to the transcript of the arraignment, Broadnax and the acting judge engaged in the following colloquy after the judge called his case:

"THE COURT: * * * What are we gonna do here with these checks?

"MR. BROADNAX: Well, it was written to Don Humphrey for work to be done at a couple locations. I was leaving town that Tuesday. It was given to him Monday postdated. I was called Thursday, and the work hadn't been done.

"I took money out of the accounts so the check wouldn't clear. I called him and told him it wouldn't clear. He tried cashing it at the bank. They wouldn't cash it. Then he took it to Don's Super Value and cashed the check.

"THE COURT: Is this Don Humphrey, Don's Super Value?

"MR. BROADNAX: No. Don Humphrey is nowhere to be found now.

"THE COURT: So, okay—well, they should be going after Don Humphrey rather than you. Okay so Don Humphrey is someone that you contracted work for?

"MR. BROADNAX: Right.

"THE COURT: He didn't do the work. You put a stop payment on the check.

"MR. BROADNAX: Right.

"THE COURT: He took the check down to Don's Super Value and tried to negotiate—

"MR. BROADNAX: Right.

"THE COURT: Apparently, that did not make a—tell you what, if you'll just go over there to Miss Goldie there, and you'll have to explain that to her. I'm inclined to dismiss it now."

Whereupon, the criminal charge was dismissed without prejudice. No further charges were filed.

During the pendency of this action, the parties took the deposition of the acting judge regarding the dismissal of the charge. According to the judge, he dismissed the charge for the following reasons:

"[I]t was a second-party check and it was postdated, so there were two problems with it, and it looked like the person trying to defraud the Super Valu was Mr. Humphrey, not Mr. Broadnax.

"So it looked like there were some problems with the case, so I basically dismissed without prejudice, sent it over to—for Vaughn Broadnax to talk to the prosecutor, see if they could work it out. If she wanted to refile, she could refile.

"* * *

"It looked to me like there were some serious flaws in the case and so that's why I did it, and it may be after the prosecutor looked at it, she might want to refile the charges or not. That's why I did not dismiss it with prejudice. It was without prejudice. If she wanted to refile, she could.

"* * *

"* * *I'm not sure exactly what all the facts were. All I had was a complaint and Mr. Broadnax's statement, and from what he said, it appeared there were some serious problems with the case going under a passing bad checks case."

The acting judge testified that he relied on Broadnax's representations in dismissing the charge. He also testified that he was acquainted with Broadnax because he had followed his "career through high school and at Ohio State, and [he] also knew his mother."

Thereafter, Broadnax initiated suit against Grout and Greene Credit. He originally filed this action in the United States District Court for the Southern District of Ohio. In the federal complaint, Broadnax alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). Pursuant to that court's supplemental, or pendent, jurisdiction, he also filed various state tort claims, including malicious prosecution, abuse of process, invasion of privacy and defamation. The federal magistrate granted summary judgment in favor of Grout and Greene Credit on the grounds that Broadnax could not claim relief under the FDCPA. The magistrate's reasoning was based upon his findings that the FDCPA protects only consumer transactions, and that the transaction between Broadnax and Humphrey was commercial in nature. Having dismissed the federal cause of action, the magistrate declined to exercise supplemental jurisdiction over the state causes of action. Broadnax appealed.

During the pendency of the federal appeal, Broadnax filed his claims in the Greene County Court of Common Pleas. He added a claim for violation of his

civil rights under Section 1983, Title 42, U.S. Code, which had not been pled in his federal cause of action. Both parties filed motions for summary judgment. The trial court dismissed Broadnax's claims for invasion of privacy and defamation, and overruled the motions regarding the remaining claims. Broadnax did not appeal from that decision. The matter proceeded to arbitration, and the arbitration panel found in favor of Grout and Greene Credit. Broadnax appealed to the trial court.

Grout and Greene Credit requested the trial court to reconsider their motion for summary judgment. Upon reconsideration, the trial court granted summary judgment in favor of Grout and Greene Credit, and dismissed all of Broadnax's claims with prejudice. It is from this order that Broadnax appeals.

During the pendency of this appeal, the United States Court of Appeals for the Sixth Circuit reversed the judgment of the federal district court, and remanded the case. The court ruled that the transaction was of a consumer nature, and therefore was subject to the FDCPA. The court of appeals reinstituted Broadnax's original complaint, inclusive of the state claims. See *Broadnax v. Greene Credit Service* (Jan. 15, 1997), C.A. 6, No. 95–3829, unreported, 1997 WL 14777.

## II

Broadnax's first assignment of error is as follows:

"The trial court erred as a matter of law in entering summary judgment for defendants and not for Mr. Broadnax."

■ Our review of the trial court's decision to grant summary judgment is *de novo*. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272. Summary judgment is appropriate when the following has been shown: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 504–505; Civ.R. 56(C).

■ We turn first to Broadnax's claim that the trial court erred by granting summary judgment against him on his malicious prosecution claim. To sustain an action for malicious prosecution, Broadnax must plead and prove (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. *Ash v. Ash* (1995), 72 Ohio St.3d 520, 522, 651 N.E.2d 945, 947–948, citing *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732. The trial court, relying upon the holding in *Gerlach v. Dearing* (Feb. 5, 1987), Darke App. No. 1176, unreported, 1987 WL 6246, specifically found that Broadnax failed to prove that the criminal

prosecution had been terminated in his favor because the termination was not on the merits. Therefore, the trial court found, as a matter of law, that he could not sustain an action for malicious prosecution.

Not surprisingly, Broadnax contends that the criminal prosecution was terminated in his favor. In support, he refers this court to *Trussell, supra,* for the proposition that a termination does not have to be on the merits in order to be favorable. He essentially argues that since the Supreme Court did not specifically state that a favorable termination must be on the merits, it follows that there is no such requirement. He also argues that the trial court's reliance on *Gerlach* is misplaced, since that case involved the termination of a malicious civil prosecution rather than a criminal prosecution.

In analyzing this case, we begin with the fundamental proposition that the person seeking damages in a malicious prosecution action must prove the favorable termination of the proceedings giving rise to such an action. In determining the issue of favorable termination, this court has held that "[t]he absence of a final determination *on the merits* in plaintiff's favor removes an essential element for a malicious prosecution action." (Emphasis added.) *Gerlach, supra.* Broadnax attempts to distinguish this case by pointing out that *Gerlach* involved a civil prosecution, rather than a criminal prosecution. We find this distinction to be immaterial. Both civil and criminal malicious prosecution require favorable termination. We cannot fathom any reason why the requirement of termination on the merits should only apply to civil prosecutions. We have held that the reasoning behind the requirement of a determination on the merits is "the rationale that an essential fact, the wrongfulness of the prior litigation, does not exist in the absence of a favorable termination [and that] [p]ermitting a malicious prosecution action under such conditions would heap one case upon another, unnecessarily confusing the judicial process and encouraging interminable litigation in an already litigous [*sic*] society." *Gerlach, supra.*

Our holding is in accord with the position taken by the Ohio Supreme Court. In examining the meaning of the "favorable termination" element in a criminal malicious prosecution case, the court has stated:

"A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash v. Ash* (1995), 72 Ohio St.3d 520, 522, 651 N.E.2d 945, 947.

In holding that the settlement or agreement of compromise of a criminal case does not constitute favorable termination, the court stated that the purpose of such settlement or compromise "* * * is to *avoid* a determination *on the merits* of the criminal proceeding." (Emphasis added.) *Id.,* at 523, 651 N.E.2d at 948. Clearly, the Ohio Supreme Court contemplated that in order to determine whether the accused is innocent, there must be a determination of the merits.

The Supreme Court has stated that "an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused." *Id.* at 522, 651 N.E.2d at 947–948. This does not change our decision. First, in this case, the criminal prosecution was dismissed *without prejudice* at the arraignment. Since the trial judge specifically stated that the charges could be refiled, we cannot conclude that there was an unconditional dismissal of the charges. Second, the judge also specifically stated that he relied upon Broadnax's representations in dismissing the case. We note that Broadnax did not correct the trial court's mistaken belief that a stop payment order had been placed on the bounced check when, in fact, that was not the case. We cannot say that this constitutes a dismissal upon the merits. Therefore, the trial court correctly determined that Broadnax's claim of malicious prosecution must fail.

■ Based upon his claim for malicious prosecution, Broadnax alleged that Grout and Greene Credit violated his civil rights by depriving him of his Fourth Amendment rights to liberty and freedom. He sought damages pursuant to Section 1983, Title 42, U.S.Code, which provides a remedy for persons whose federal rights have violated. Based upon Broadnax's motion for summary judgment, the trial court found that the Section 1983 cause of action was predicated upon Broadnax's claim for malicious prosecution. Therefore, the trial court determined that the Section 1983 action could not be sustained in light of the fact that the malicious prosecution action failed. Broadnax does not dispute the finding that his Section 1983 action is based upon his malicious prosecution claim. Instead, he contends that despite the dismissal of the malicious prosecution claim, the trial court was required to consider whether he had met the elements necessary for a Section 1983 action.

In researching the use of a claim of malicious prosecution as the basis for a Section 1983 action, we have found that the question of whether such a claim is actionable under Section 1983 is a subject "on which there is an embarrassing diversity of judicial opinion." *Albright v. Oliver* (1994), 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114, 121, fn. 4, quoting *Albright v. Oliver* (C.A.7, 1992), 975 F.2d 343, 345. However, "[m]ost of the lower [federal] courts recognize some form of malicious prosecution action under § 1983." *Id.* The United States Sixth Circuit is a jurisdiction which has held that a victim of malicious prosecution may show a constitutional violation redressable under Section 1983. See, *e.g., Coogan v. Wixom* (C.A.6, 1987), 820 F.2d 170. To maintain such an action, Broadnax must show that Grout and Greene Credit have deprived him of a right secured by the Constitution and laws of the United States, and that they have done so under color of state law. Section 1983, Title

42, U.S.Code. However, he must first plead and prove the state tort elements of malicious prosecution. See *Reed v. Chicago* (C.A.7, 1996), 77 F.3d 1049; *Coogan, supra,* 820 F.2d at 174; *Singleton v. New York* (C.A.2, 1980), 632 F.2d 185, 193–195, certiorari denied (1981), 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347. Even if he were able to show all the elements of the state tort, a Section 1983 action is only proper when "the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension." *Coogan, supra,* 820 F.2d at 175, quoting *Dunn v. Tennessee* (C.A.6, 1982), 697 F.2d 121, 125, certiorari denied (1983), 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349. Since we have affirmed the trial court's finding that Broadnax failed to establish the existence of a genuine issue of material fact with respect to his claim of malicious prosecution, and since we cannot say that he has been deprived of a constitutional right, we must likewise affirm the dismissal of the Section 1983 action based upon that claim.

 We next turn to Broadnax's contention that the trial court erred by dismissing his claim for abuse of process. Again, we must determine whether Broadnax has pled and proved the essential elements necessary to maintain his cause of action. The Ohio Supreme Court, in determining that Ohio has recognized the existence of the tort of abuse of process, held that to establish a claim of abuse of process, a plaintiff must show "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115, 118. The court noted, in reference to the second element, that "there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at fn. 2, citing Prosser & Keeton, Law of Torts (5 Ed.1984) 898.

In a later case, the Supreme Court stated that " '[a]buse of process' * * * connotes the use of process properly initiated for improper purposes." *Robb v. Chagrin Lagoons Yacht Club, Inc.* (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9, 14. In explaining this concept, the court stated:

"In an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' Prosser & Keeton on Torts (5 Ed.1984), Section 121. Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Id.* at 271, 662 N.E.2d at 14.

The facts in *Robb* provide an excellent example of the use of process for an improper, ulterior purpose. In that case, the defendants, who were members of a yacht club, had club grievances filed against them by another member. The defendants thereafter filed multiple lawsuits against the yacht club. A letter written by one of the defendants to the membership stated that the lawsuits would be dismissed if the grievances were dropped. The Supreme Court held that "reasonable minds could conclude that [the defendants] instituted at least one of their suits with the intention to use it as a club to coerce the membership to vote in their favor," regarding the grievances. *Id.* The Supreme Court noted that "the trial court had no authority to order club members how to vote." *Id.* Therefore, there was clear evidence that the lawsuits filed by the defendants against the yacht club were filed for an ulterior, improper purpose.

In the case before us, the trial court dismissed Broadnax's claim, on the ground that he had failed to prove the second element of abuse of process. Broadnax's appeal turns on his assertion that the trial court erroneously held that "the filing of a criminal complaint, without further action, cannot constitute abuse of process." However, our review of the judgment fails to reveal such a holding. Instead, we note that the trial court, relying on *Yaklevich, supra,* noted that "merely filing a complaint and following it through to its authorized conclusion is NOT abuse of process." The trial court further noted, in reliance upon *Robb, supra,* that since the criminal trial court would have had the authority to enforce Broadnax's obligation to pay the check he had issued, there could be no showing that the criminal action was filed to accomplish an ulterior or improper purpose.

We agree with the ruling of the trial court. Without doubt, Grout and Greene Credit signed an affidavit regarding a check returned for insufficient funds. R.C. 2913.11(A) provides authority for prosecution of insufficient-funds checks. The tort of abuse of process contemplates something more than the mere filing of a statutorily authorized criminal complaint in response to the negotiation of a check returned for insufficient funds. Further, since the criminal trial court had the ability to require Broadnax to make the check good by paying restitution, see R.C. 2929.21(E), Broadnax has failed to show that Grout and Greene had an ulterior motive to compel an act by him that the trial court could not require. Therefore, we conclude that Broadnax has failed to establish that any genuine issue of fact exists with regard to his abuse of process claim, and the trial court did not err in rendering summary judgment against him on this claim.

Finally, we address Broadnax's argument that the trial court erred by granting summary judgment on his claim of violation of the Ohio Consumer Sales Practices Act. The OCSPA, which is set forth in R.C. 1345.01 through 1345.99, prohibits unfair, deceptive, and unconscionable acts or practices in connection with consumer transactions. R.C. 1345.02 and 1345.03. A "consumer transaction"

is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). A "consumer" is defined as "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). The collection of debts associated with consumer transactions is within the purview of the OCSPA since it covers acts which occur before, during, or after the transaction. See R.C. 1345.02(A); 1345.03(A); *Celebrezze v. United Research, Inc.* (1984), 19 Ohio App.3d 49, 19 OBR 131, 482 N.E.2d 1260.

The trial court's decision focused on the transaction between Broadnax and Humphrey, which it found to be of a commercial nature. The trial court further found that Humphrey, by negotiating the check to Don's Super Valu, merely substituted Don's for himself as payee. Therefore, the court reasoned that the commercial transaction between Broadnax and Humphrey gave rise to the debt being collected by Grout and Greene Credit and was outside the purview of the OCSPA. Grout and Greene Credit similarly argue that Broadnax's original commercial debt cannot be transformed into a consumer debt by subsequent negotiations of the check.

Broadnax cites R.C. 1303.43(B)(1) for the proposition that the alteration to the date on the check discharged his obligation to satisfy the check. He also argues that the transaction between him and Humphrey was not commercial because he did not own the rental property, and because he received no salary or profits from managing the properties.

■ After filing his brief, Broadnax submitted a copy of the opinion issued by the United States Court of Appeals for the Sixth Circuit regarding his claims asserted in federal court. As stated above, that court ruled that the transaction between Humphrey and Super Valu, which it found to be in the nature of a consumer transaction, was the appropriate transaction to consider. Broadnax contends that the decision of the federal appeals court is binding on this court under the doctrine of *res judicata.* Although we disagree as to the binding effect of the opinion of a federal appeals court upon this court, [1] we do find its reasoning to be persuasive. In that case, the court opined as follows:

"In the instant case, the defendants had *alleged* that Broadnax owed Don's Super Valu a *consumer* debt by inaccurately alleging that Broadnax had negotiated the check to the grocery store. Additionally, by attempting to collect a debt

---

1. The opinion of the federal appeals court is based upon that court's construction of the Fair Debt Collection Practices Act, Section 1692 *et seq.*, Title 15, U.S.Code, and does not purport to determine whether a claim exists under the Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.*

evidenced by a personal check which had been cashed by an individual at a supermarket, the defendants sought to satisfy a purported consumer obligation. No record evidence indicated that [Don's Super Valu] or the defendants were aware of the nature of the transaction between Broadnax and Humphreys which triggered execution of the check by Broadnax. Moreover, even if [Don's Super Valu] or the defendants had possessed knowledge of the character of the underlying transaction between Broadnax and Humphreys, the defendants nevertheless had not been retained to collect any debt created thereby, and the grocery store in fact had no interest in the genesis of such an obligation. Rather, the defendants endeavored only to secure reimbursement of funds disbursed by Don's Super Valu, plus recovery of an additional 'bad check' fee, associated with the endorsement of the instant check to the grocery store in a consumer transaction.

"The undisputed facts evidence the creation of a consumer debt running from Humphreys to Don's Super Valu in the amount of $165, which Humphreys attempted to discharge by assignment of Broadnax's check to the supermarket. The defendants attempted to collect that consumer debt from Broadnax." *Broadnax v. Greene Credit Service* (Jan. 15, 1997), C.A.6, No. 95–3829, at 5–6, unreported, 1997 WL 14777.

We agree with the United States Court of Appeals for the Sixth Circuit that the significant event determining the nature of the transaction, for which the debt was being collected by Grout and Greene Credit, is the Humphrey–Super Valu transaction. The more problematic question is the fact that Broadnax does not appear to be a consumer, as defined by the OCSPA, since he did not personally engage in the consumer transaction with Super Valu. However, the OCSPA is a remedial law requiring liberal construction. *State ex rel. Celebrezze v. Hughes* (1991), 58 Ohio St.3d 273, 275, 569 N.E.2d 1059, 1062. Thus, we conclude that the protection afforded by the statute extends to persons in Broadnax's position. Our decision should not be construed as an opinion on the merits of Broadnax's claim under the OCSPA. Instead, we merely conclude that any debt collection actions taken by Grout and Greene Credit are subject to the provisions of the OCSPA, since they constituted an attempt to collect a consumer obligation.

Although Broadnax apparently wishes this court to address the question of whether he is obligated to pay the amount of his check, that issue is not presently before us. Neither is the issue of whether Super Valu is entitled to pursue a claim against Broadnax as the maker of the check; nor is the issue of the propriety of Broadnax's actions to prevent its clearance. Those determinations turn on factual findings that are appropriately left to the trial court and jury.

Accordingly, Broadnax's assignment of error is overruled insofar as it pertains to his claims of malicious prosecution, abuse of process, and Section 1983, Title

42, U.S.Code civil rights violations. However, his assignment of error is sustained insofar as it relates to his OCSPA claim, and that claim is remanded to the trial court for a determination on the merits.

## III

Broadnax's second assignment of error is as follows:

"The trial court erred as a matter of law by not ruling on Mr. Broadnax's motion in limine regarding character evidence."

Prior to the entry of the summary judgment, Broadnax filed a motion *in limine* to exclude evidence regarding his finances. In the motion, Broadnax claims that Grout and Greene Credit "intend to divert the jury from the material facts in this case," by showing that he has "bounced" multiple checks. Broadnax claims that the trial court erred by failing to rule on the motion.

Our review of the record shows that the trial court, in its decision granting summary judgment, merely stated that the motion *in limine* was rendered moot by the dismissal of Broadnax's claims. Broadnax, however, disagrees, and contends that this court should rule on the merits of the motion, and "direct the trial court regarding the law of character evidence."

In light of the fact that all of Broadnax's claims were dismissed, we do not believe that the trial court erred in finding the motion moot. There was no reason for the court to consider the motion at that point. Obviously, our ruling regarding Broadnax's allegations of violation of the provisions of the OCSPA requires that the trial court proceed with a determination of the merits of that claim. Therefore, the motion *in limine* is no longer moot. However, since the trial court has not considered the merits of Broadnax's motion, any opinion we might render on this subject would constitute an advisory opinion. Therefore, we decline to "direct" the trial court regarding the "law of character evidence." This court will not render advisory opinions to a trial court. *Bentleyville v. Pisani* (1995), 100 Ohio App.3d 515, 519, 654 N.E.2d 394, 397. That is especially appropriate with respect to a liminal ruling concerning the admissibility of evidence. Questions concerning the admissibility of evidence are notoriously fact- and context-sensitive, especially where they involve the balancing of probative value and prejudicial impact.

Broadnax's second assignment of error is overruled because it does not concern a final appealable order.

## IV

Broadnax's first assignment of error having been overruled in part and sustained in part, and his second assignment of error having been overruled, that

part of the judgment of the trial court rendering judgment against Broadnax on his claims of malicious prosecution, abuse of process, and violation of his Section 1983 civil rights is affirmed; that part of the judgment of the trial court rendering summary judgment against Broadnax on his claim of a violation of the OCSPA is reversed; and this cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.