**Judy BLEVINS, Plaintiff,**

v.

**HUDSON & KEYSE, INC., et al., Defendants.**

No. 1:03–CV–241.

United States District Court, S.D. Ohio, Western Division.

Sept. 29, 2004.

656

Edward Alan Icove, Smith & Condeni Co. LPA, Cleveland, OH, Steven Charles Shane, Bellevue, KY, for Plaintiff.

Jeffrey Charles Turner, Boyd W. Gentry, Surdk Dowd & Turner Co. LPA, Dayton, OH, David Kerwin Frank, Mazanec Raskin & Ryder Co. LPA, Columbus, OH, Todd M. Raskin, Cleveland, OH, for Defendants.

## MEMORANDUM AND ORDER

BECKWITH, Chief Judge.

Before the Court is defendants Craig W. Relman Co., L.P.A., Craig W. Relman, and Jack S. Malkin's (hereinafter "Attorney Defendants") motion for judgment on the pleadings (Doc. 7), and plaintiff's opposition (Doc. 11.)

*Factual Background*

Plaintiff Judy Blevins alleges that, at some unknown time in the past, she obtained a MasterCard credit card account with Household Bank. She denies owing anything on that account. (Compl.¶ 6–7). Defendant Hudson & Keyse, Inc. purchased the Plaintiff's account from Household Bank. (Doc. 5, H & K Answer, ¶ 8) H & K then filed a lawsuit against Plaintiff in Ohio state court. The complaint was filed by the Attorney Defendants on behalf of H & K. Attached to the complaint was an affidavit executed by H & K's President, stating that H & K was the "holder in due course" of Plaintiff's account. The affidavit was incorporated by reference into the complaint. (Compl., Exhibits A and B) The Attorney Defendants' motion states that there has been no judgment or other dispositive order entered in the state court action.

Plaintiff then filed this lawsuit against H & K and the Attorney Defendants, alleging the affidavit violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq., and the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq.

The Attorney Defendants filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), arguing they are absolutely immune from any liability to Plaintiff. They also argue that this action is barred by the *Rooker–Feldman* doctrine; that the FDCPA violates the 10th amendment to the United States Constitution; and that the OCSPA violates Ohio's separation of powers doctrine and thus is unconstitutional as applied to them. (The Attorney Defendants' motion does not contest that they are "debt collectors" under the FDCPA, or "suppliers" within the meaning of the OCSPA.)

*Analysis*

■ A motion for judgment on the pleadings under Rule 12(c) is decided under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). See, *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998). A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir. 1971). A court will accept all reasonable inferences that might be drawn from the complaint. *Fitzke v. Shappell,* 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *The Fair Debt Collection Practices Act.*

██ Congress first enacted this statute in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations. See *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992). The Court must evaluate the defendant's conduct under the "least sophisticated consumer" test, and objectively determine whether that consumer would be misled by the defendant's statement. *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1029 (6th Cir.1992).

### B. *Absolute Immunity.*

██ The Attorney Defendants contend that they are absolutely immune from any liability under the FDCPA to Plaintiff by various state law privileges and immunities, including a litigation privilege, the doctrine of "attorney immunity," and witness immunity that attaches to their client's affidavit.

Two recent decisions have shielded attorneys from FDCPA liability based upon affidavits filed in state court collection litigation. See, *Etapa v. Asset Acceptance Corporation,* 373 F.Supp.2d 687 (E.D.Ky. 2004), Order dated April 29, 2004; and *Beck v. Codilis & Stawiarski, P.A.,* 2000 WL 34490402, 2000 U.S. Dist. LEXIS 22440 (N.D.Fla., Dec. 26, 2000).

In *Etapa,* the defendant attorneys filed a collection action in Kentucky state court on behalf of their client. The complaint was filed with the client's affidavit stating that the client was a "holder in due course" of Etapa's credit card debt. Etapa then sued the debt collector and the attorneys under the FDCPA. The district court granted the attorneys' motion for judgment on the pleadings. The district court held that the attorneys had not made any actionable "statement or representation" simply by filing the state court complaint, which did **not** incorporate the client's affidavit. Alternatively, the court held that attorneys are immune from liability for false statements made in judicial proceedings, citing *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

*Beck* involved an FDCPA claim against a lender's attorney, who had filed an affidavit in the lender's foreclosure action attesting to the hours spent on the foreclosure suit, and the hourly rate charged to the lender. In fact, the attorney charged the lender a flat fee for the foreclosure. The district court held that **witness** immunity absolutely protected the attorney from the borrowers' FDCPA claims.

Plaintiff on the other hand cites *Todd v. Weltman, Weinberg & Reis Co., LPA,* 348 F.Supp.2d 903 (S.D.Ohio 2004) (Dlott, J.), Order of August 4, 2004. There, the district court denied a motion for judgment on the pleadings in an FDCPA action against attorneys who signed form affidavits filed in state garnishment proceedings. The plaintiffs alleged that the affidavits falsely stated the attorney had "good reason to believe" that the debtor had nonexempt assets subject to garnishment. The attorneys argued they were immune

from suit based on the common law immunity doctrine, which the court rejected.

Many courts have held that the FDCPA applies to attorneys filing court documents. See, e.g., *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir.2003) [verified complaint filed in state collection action by defendant attorneys subject to FDCPA]; *Gearing v. Check Brokerage Corporation*, 233 F.3d 469 (7th Cir.2000) [debt collector's complaint, incorrectly alleging it was "subrogated" to rights of creditor, subjected attorney to FDCPA liability]; *Tomas v. Bass & Moglowski, P.C.*, 1999 U.S. Dist. LEXIS 21533 (W.D. Wisc., June 29, 1999) [summons and complaint filed in state replevin action subjected attorney to FDCPA liability]; and, *Campos v. Brooksbank*, 120 F.Supp.2d 1271 (D.C.N.M.2000) [attorney's fee affidavit and deposition notice subject to FDCPA]. None of these cases discuss attorney immunity.

■ Congress legislates against a background of common-law adjudicatory principles. Where a common law principle is well established, ". . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). The statutory purpose and legislative history of the FDCPA do not support Attorney Defendants' immunity argument.

As originally passed, the FDCPA excluded **"any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client"** from the definition of "debt collector." Pub.L. 95–109, sec 803(6)(F). Plainly Congress intended *not* to regulate debt collection litigation when conducted by attorneys. But Congress repealed the attorney exemption in 1986

**without** creating a litigation or litigation-related exception for attorneys.

In *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court unanimously held that the Act applies to lawyers' "litigation activities." There, a bank's attorney filed suit against a debtor and, during the course of the litigation, sent a letter to the debtor's attorney trying to settle the case. The complaint and the letter both erroneously sought recovery of an amount for insurance coverage which turned out to be beyond the scope of the original loan agreement. The debtor then sued the attorney under several provisions of the FDCPA. The Seventh Circuit held the attorney was subject to the FDCPA, disagreeing with the Sixth Circuit's contrary opinion in *Green v. Hocking*, 9 F.3d 18 (6th Cir.1993). The Supreme Court affirmed the Seventh Circuit, rejecting the rationale set forth in *Green* that subjecting litigation-related activities to FDCPA liability would create intolerable conflicts.

Other federal remedial statutes have been found to abrogate state law immunities. See, e.g., *Nix v. O'Malley*, 160 F.3d 343 (6th Cir.1998), holding that defendant and his attorneys were not immune from civil liability under the federal wiretap statute (18 U.S.C. § 2510) and the similar Ohio statute, for attaching a transcript of the intercepted communication to a summary judgment motion filed in underlying state court litigation. Rejecting an absolute litigation privilege in this context, the Sixth Circuit held that nothing on the face of the statute could be read to immunize the defendants from liability simply because the "publication" was in a pleading filed in court. See also, *Rosania v. Taco Bell of America*, 303 F.Supp.2d 878 (N.D.Ohio 2004), holding that the defendant/employer's counterclaim filed in plaintiff's FMLA suit could constitute ac-

tionable retaliation under the FMLA, and rejecting the argument that an absolute privilege applied to the filing of the counterclaim. Because such a broad privilege could interfere with the policies underlying Title VII and ADA, the state privilege must yield. See also, *Martinez v. California*, 444 U.S. 277, 284, n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) [state immunity law does not bar federal § 1983 claim]; *Irwin v. Mascott*, 112 F.Supp.2d, 937, 962–63 (N.D.Cal.2000) [California litigation privilege not applicable to FDCPA claim].

The Court concludes that the Attorney Defendants are not immune from Plaintiff's FDCPA complaint under the state law litigation privilege or attorney immunity doctrines.[1]

### C. *Rooker–Feldman Doctrine.*

■ The Attorney Defendants argue that this Court should decline jurisdiction of Plaintiff's claims against them under the *Rooker–Feldman* doctrine. This doctrine addresses the district court's subject matter jurisdiction to review state court judgments. *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir.2003). Pursuant to *Rooker-Feldman*, district courts do not have subject matter jurisdiction to engage in what amounts to appellate review of a state court judgment.

The Attorney Defendants motion admits that no judgment or dispositive order has been entered in the state court litigation. For that reason alone, *Rooker–Feldman* does not apply here and does not deprive this Court of jurisdiction over Plaintiff's claims.

### D. *Tenth Amendment Challenge.*

■ The Attorney Defendants next argue that the FDCPA as applied to them is unconstitutional as a violation of the Tenth Amendment to the United States Constitution. They suggest that the regulation of the practice of law is uniquely a function of state law, and that Congress cannot legislate in that area under the guise of its Commerce Clause powers.

■ Federal statutes are presumptively valid, even in the face of a constitutional challenge. See *Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980). When it passed the FDCPA in 1977, Congress specifically found that the practice of debt collection had grown to the point that it "substantially affected" interstate commerce. Congress has broad power to legislate in that field. See, e.g., *Perez v. United States*, 402 U.S. 146, 155–157, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), rejecting constitutional challenge to the Consumer Credit Protection Act which regulates purely intrastate "loan sharking." Congress found that such intrastate activities sufficiently affect interstate commerce to warrant federal regulation.

The Attorney Defendants reliance on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) is misplaced. In holding that the "Gun Free School Zones Act" exceeded Congressional power to regulate commerce, the Supreme Court specifically noted that the statute had no connection to any type of commerce or commercial transaction. Here, it is beyond doubt that debt collection litigation, even if prosecuted in the state court, is related to commerce and is a part of debt collection practices that Congress intended to regulate.

Further, when Congress amended the FDCPA to remove the attorney exemption

---

1. Nor can the Court discern any federal common law litigation privilege that could apply here. Indeed, *Heintz v. Jenkins* cuts against the existence of any such federal privilege, as the Court explicitly held that litigation related conduct is subject to the FDCPA.

from the Act's requirements, it found that attorneys who "regularly" collect debts must follow the Act's requirements when collecting debts. There is nothing in the statute that purports to regulate the practice of law, only the practice of debt collection. The Attorney Defendants do not argue that conforming their conduct to the FDCPA would require them to violate any law or rule that governs their legal practice. Even if there were such a conflict, however, the Supremacy Clause of the Constitution expressly provides that state law must yield to the federal statute.

The Court finds that the FDCPA as applied to the Attorney Defendants does not violate the Tenth Amendment nor the Commerce Clause.

### E. *Ohio Consumer Sales Practices Act.*

■ Finally, the Attorney Defendants contend that the OCSPA as applied to them violates the constitutional separation of powers doctrine. They argue the statute "impermissibly infringes upon and conflicts with" the exclusive power of the Ohio Supreme Court to regulate the practice of law.

The OCSPA generally prohibits unfair and deceptive statements or conduct in connection with defined consumer transactions. R.C. § 1345.02(B)(10), for example, forbids any representation that "a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." There is nothing on the face of the statute suggesting it regulates the practice of law.

The Ohio courts have held that the OCSPA applies to debt collectors. See, *Broadnax v. Greene Credit Service,* 118 Ohio App.3d 881, 893, 694 N.E.2d 167 (Ohio App.1997), *app. den.,* 79 Ohio St.3d 1483, 683 N.E.2d 787 (1997); *Celebrezze v. United Research, Inc.,* 19 Ohio App.3d 49, 50,

482 N.E.2d 1260 (1984). So, too, has the Sixth Circuit. See *Schroyer v. Frankel,* 197 F.3d 1170, 1177 (6th Cir.1999). The statute has also been applied to litigation and to attorneys. See, e.g., *Celebrezze v. United Research,* supra (debt collector's lawsuit filed in distant county violated OCSPA); and, *Gatto v. Frank Nero Auto Lease, Inc.,* 1999 WL 195664, 1999 Ohio App. LEXIS 1571 (Ohio App.1999) (obtaining default judgment and filing motion to revive that judgment subjected attorneys to the OCSPA).

The Attorney Defendants cite cases where the Ohio Supreme Court has declared a statute unconstitutional because it violated the separation of powers doctrine. For example, they cite *Cleveland Bar Association v. Picklo,* 96 Ohio St.3d 195, 772 N.E.2d 1187 (2002), where the Ohio Supreme Court declared unconstitutional a statute purporting to allow a landlord's agent to file and prosecute forcible entry and detainer actions in state municipal court, even though the agent is not an attorney. The Court held that the statute invaded the exclusive authority of the judicial branch to define the practice of law and supervise its practitioners. But the OCSPA does not define the practice of law nor does it invade the province of the Ohio Supreme Court to regulate that practice. The Attorney Defendants do not point to any conflict between the OCSPA's requirements, and Ohio law governing the practice of law. In the absence of such a conflict, the Court cannot find that the OCSPA violates the separation of powers doctrine.

### CONCLUSION

For the foregoing reasons, the Court denies Defendants Craig W. Relman Co. LPA, Craig W. Relman and Jack S. Mal-

kin's motion for judgment on the pleadings.